# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Adrian Ortiz** | * | |
| **5661 Columbia Road Apt. 301** | * | |
| **Columbia, MD 21044** | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| | * | **Case No.:  22-1396** |
| | * | |
| **v.** | * | |
| | * | |
| | * | |
| **Baltimore City, Maryland;** | * | **JURY TRIAL DEMANDED** |
| **Baltimore Police Department** | * | |
| **242 W. 29th Street** | * | |
| **Baltimore, MD 21211** | * | |
| | * | |
| *Defendant.* | * | |
| | * | |
| **Serve:** | * | |
| | * | |
| **The Baltimore City Law Department** | * | |
| **Office of Legal Affairs** | * | |
| **C/O City Hall, Room 101** | * | |
| **100 N. Holliday St., Suite 101** | * | |
| **Baltimore, MD 21202** | * | |
| | * | |
| **Baltimore Police Headquarters** | * | |
| **601 East Fayette St.** | * | |
| **Baltimore, MD 21202** | * | |
| | * | |

---

## COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES

COMES NOW, Plaintiff, Officer Adrian Ortiz (hereinafter "Plaintiff" or "Ofc. Ortiz"), by and through his undersigned counsel Dionna Maria Lewis, Esq. complains against Defendant, Baltimore City Police Department (hereinafter "Defendant" or "BPD") and in support thereof states as follows:

1

## INTRODUCTION

1. On August 10, 2016, the Department of Justice published a scathing report about the Baltimore Police Department's widespread constitutional violations, the targeting of African Americans, and a culture of retaliation. And, while the investigation and report focused largely on how Baltimore police abused the law, the people they were meant to serve, and the public trust, the complicit institutional engine that acquiesces in the destruction and demise of BPD's own officers and sergeants of color remains pervasive, continuous, and swept under the rug. ***This case is about when the police are fearful of the police—their own brothers and sisters in blue.***

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII"); the Civil Rights Act of 1866, Section 1983(a) ("Section 1983"), 42 U.S.C. § 1320d-6 *et seq*.; and the Maryland Fair Employment Practices Act, Md. Code § 20-601 *et seq*. (FEPA) for the Defendant's unlawful harassment, discrimination, and hostile work environment based on race (Hispanic), national origin (Hispanic), sex (male), and retaliation for participation in a protected activity against the Plaintiff.

## JURISDICTION AND VENUE

3. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*., and Section 1983, to redress and enjoin employment practices of the Defendant.

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

5.  Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

6.  Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transacts substantial business in this District, and Defendant maintains employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

7.  Plaintiff has exhausted all of his administrative remedies.

8.  Plaintiff filed a Charge with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on March 10, 2021, alleging retaliation for his participation in a statutorily-protected activity.

9.  The Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Right-to-Sue Letter through the EEOC electronic portal, which Plaintiff received on March 9, 2022.

10.  Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

11.  Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

12. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of his constitutional and statutory rights.

13. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## **PARTIES**

14. Plaintiff, Officer Adrian Ortiz, is a Hispanic man who resides in Howard County, Maryland. In October 2019, he was named as a witness in a fellow Hispanic Police Officer's EEOC complaint against Defendant.

15. Defendant is a municipal police force, whose jurisdiction encompasses Baltimore, Maryland, the State's largest city.

16. The Baltimore Police Department ("Defendant" or "BPD") is the 8th largest municipal police force in the United States, staffed by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of approximately 611,648 people.

17. Ofc. Ortiz works at the Baltimore Police Department ("BPD").

18. During the relevant period, Defendant employed Plaintiff, Ofc. Ortiz.

19. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

20. Plaintiff, Ofc. Adrian Ortiz has been employed by Defendant, the Baltimore Police Department ("BPD") since 2014 until present.  Plaintiff currently works as an Officer with BPD.

21. In December 2018, Plaintiff's fellow Hispanic Officer Luis Garcia filed an EEOC complaint against Defendant alleging employment discrimination based on race, sex, national origin, and retaliation. Though Plaintiff was not called to testify, he was named as a witness and Defendant was made aware of his willingness to testify.

22. After Defendant became aware of Plaintiff's participation in a protected activity by serving as a witness in Ofc. Garcia's complaint, numerous supervisors approached Plaintiff personally to inform him that his career as a police officer would be over just for going against the Department. Plaintiff was told that the Department was watching his every move and would "blackball" him because he now had a target on his back.

23. Plaintiff endured this pressure and harassment for many months, despite not being called to offer testimony in Ofc. Garcia's EEOC proceedings.

24. In May 2020, clear signs of retaliation and efforts to actively harm his career began to manifest when Plaintiff was charged with neglect of duty for failing to write a motor vehicle accident report five (5) years prior when responding to an incident in December 2015 in the Southeast District. There were no victims or complainants at the scene, so there was no indication of how the incident occurred. Plaintiff was the only officer charged, despite a supervisor having also come to back him up during the original incident. Plaintiff was required to attend a refresher course for motor vehicle accidents.

25. In April 2021, Plaintiff was again charged for neglect of duty with regard to a two-car accident that had occurred in June 2020. When Plaintiff arrived, two other officers were already on the scene. Both parties to the accident were transported to the hospital via ambulance, and one of the backup officers who was present stated that he would assist Plaintiff by writing and taking the required 309 forms to each victim at the hospital while Plaintiff remained on scene. However, this officer failed to do so and Plaintiff was charged with neglect of duty for relying on fellow officers to carry out required tasks, despite the body-worn camera documentation of the interaction with his fellow officers. The other officers were not charged.

26. On February 8, 2022, the Internal Affairs Officer handling Plaintiff's neglect of duty case came to the Central District and advised Plaintiff that his punishment would be a Non-Punitive Counseling Letter for the early termination of his body-worn camera. Plaintiff asked if that was the extent of his punishment and the Internal Affairs Officer confirmed that it was, but on March 8, 2022 Plaintiff was called back to the Internal Affairs Office on Kirk Avenue and was then served with additional charges.

27. Separate from Plaintiff's charges for neglect of duty, Plaintiff was suspended and offered termination for an off-duty DUI, during which Defendant was processed and charged in violation of Defendant's own policy.

28. While off duty in October 2020, Plaintiff was found outside of his vehicle and visibly ill, which led to officers being called to the scene. Plaintiff was told he was not in trouble and all he had to do was go with the medics. Following a search of his vehicle, however, the responding officers realized Plaintiff's identity. He was then transported to the hospital but received no treatment and was released to the responding officers, who then brought him

to the Southeastern District, and later took him to Defendant's headquarters where he was met with Internal Affairs Officers.

29. Internal Affairs ordered Plaintiff to conduct a breathalyzer test for administrative purposes, and then required him to test a second time for criminal charges. He did not have blood drawn in the hospital, and as such the breathalyzer tests were conducted outside of the required two-hour window for DUI arrests.

30. Defendant ordered a supervisor to place Plaintiff in handcuffs and transported him to Central Booking Intake Facility, where he was given a police shirt to wear inside the jail in clear disregard for his safety and identity as a police officer. Plaintiff at all times cooperated with the responding officers and other officials but was never given an option to sign for his citations or have someone come pick him up from the station.

31. Following Plaintiff's DUI incident he was placed on suspension, and in February 2021 Plaintiff had an early intervention meeting with Defendant's Health Services Supervisor during which he was advised that Defendant would be offering him termination as a punishment with an option of a Trial Board Hearing to fight the termination. At this time, Plaintiff's case was still pending in court, and other fellow officers with alcohol-related offenses were still working for the Department.

32. While Plaintiff's suspension and investigation was pending, he was subjected to further discrimination and disparate treatment in scheduling his work hours and assignments. In December 2021, the police department was going to permanent shifts, and Plaintiff had put in a bid for the shift he wanted which based on his seniority he should have received. At the time, his supervisor was out of work for medical leave and advised Plaintiff to speak with the administrative supervisor and explain to him that he had submitted his bid for the

shift. Despite speaking with the administrative supervisor multiple times, Plaintiff did not receive any assistance.

33. Plaintiff then approached another patrol shift supervisor about this incident and explained that he was suspended and had not been assigned a shift. The supervisor advised Plaintiff that because he was suspended for a DUI he was probably going to be fired or moved out of the District and that was why he had not received a shift assignment and the vacation book.

34. Plaintiff spoke to his Shift Commander and learned that other suspended officers had their shift assignments vacation book given to them on time. In contrast, Plaintiff's leave was approved so far past the due date that the Shift Commander had no choice but to approve all of his time based on his Fraternal Order of the Police (FOP) contract.

35. During Plaintiff's suspension period he was available to work overtime at the Central District Desk and Central Booking Intake Facility. In February 2022 the Central District Shift Commander offered Plaintiff overtime at the Central District front desk. He accepted the offer to work but moments later was advised by the same supervisor that he could no longer work overtime because he was suspended. Plaintiff was then advised by the Central District Administrative Supervisor that he could no longer work overtime because he was suspended, and that he was advised by Internal Affairs to give out that order. When Plaintiff asked for the revised policy about suspended personnel working overtime, he was told that it did not matter, and that the orders came from Internal Affairs. Based on reason and belief, other suspended officers outside of Plaintiff's protected group continued to work overtime without issues.

36. Plaintiff was shocked that he was immediately moved towards termination when based on reason and belief, he was also aware of other cases where White male and female officers and supervisors who had been suspected of misconduct or other severe offenses, were not subjected to the same level of penalty or adverse action. Based on reason and belief, examples of comparators and comparative scenarios include:

    a. Major James Handley (White/male) called a BPD applicant a "fucking n\*gger" in the workplace, which was overheard by other BPD officers. Although the personnel case against him was sustained, he was given the opportunity to retire from the Department without reprimand and seemingly any adverse personnel impact.

    b. Lt. William Colburn (White/male) had several sustained DUI cases as well as a fleeing and eluding police charge. He was ultimately suspended then reinstated with minimal punishment and allowed to keep his rank. Lt. Colburn has since retired from the Department.

    c. Officer Jason Zimmerman (White/male) was charged with 'use of force' for punching a male in the face several times who was suffering from a behavioral crisis. Ofc. Zimmerman received no suspension, and instead he received a severe letter of reprimand and a loss of 5 days of leave. Sometime later, Ofc. Zimmerman was suspended awaiting a declination letter for a police officer involved shooting.

    d. Lt. Thomas Mistysyn (White/male) was the subject of multiple EEOC complaints for discrimination and harassment towards other Hispanic Police Officers in the Southwest District. He was recently moved to the Central District and will be allowed to retire with no punishments or penalties.

37. The harassment and severe punishment Plaintiff experienced are an unequivocal demonstration of discriminatory and disproportionate treatment of him as a Hispanic male, particularly when comparing his treatment and punishment to his similarly situated non-Hispanic and non-Hispanic male colleagues, and of retaliation against him as an Officer who engaged in statutorily-protected activity and cooperation in the EEOC complaint of a fellow Hispanic Officer.

38. Plaintiff continues to work in a hostile work environment where he fears discrimination and retaliation at the hands of Defendant.

39. The Defendant's discriminatory practices have been effectuated in violation of federal and state statutes, including Title VII of the Civil Rights Act, Section 1983, and FEPA.

## COUNT I

### VIOLATION OF TITLE VII - RACE DISCRIMINATION

40. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

41. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

42. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is Hispanic and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified police officer, as he has approximately eight (8) years on the force and has had no serious on-duty disciplinary issues of record prior to the charges at issue. Additionally, Plaintiff suffered an adverse

employment action directly related to his membership in a protected class pursuant to Title VII, when Defendant twice charged him with neglect of duty and suspended him for his off-duty DUI that ultimately resulted in seemingly unwarranted and disparate treatment, despite his cooperation. Finally, the penalty that was lodged against Plaintiff was disproportionate when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for similar—or even more egregious—offenses.

43. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of his employment.

44. Defendant knew that Plaintiff was Hispanic prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his race.

45. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race.

46. Defendant treated Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his race.

47. Similarly situated non-Hispanic White employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and his workplace conditions.

48. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

49. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

50. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

51. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race.

52. Defendant discriminated against Plaintiff because of his race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

53. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

54. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

55. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

56. Further, Defendant's treatment and actions are ongoing.

57. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

58. Similarly situated non-Hispanic White employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

59. By law, Baltimore City Police Department must comply with Title VII, but through their conduct have violated Title VII.

## COUNT II

**VIOLATION OF TITLE VII – NATIONAL ORIGIN DISCRIMINATION**

60. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

61. A *prima facie* case of national origin discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

62. Here, the four (4) elements of a *prima facie* case of national origin discrimination are met. The Plaintiff is a Hispanic male, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified police officer, as he has approximately eight (8) years on the force and has had no serious on-duty disciplinary issues of record prior to the charges at issue. Additionally, Plaintiff suffered an adverse employment action directly related to his membership in a protected class pursuant to Title VII, when Defendant twice charged him with neglect of duty and suspended him for his off-duty DUI that ultimately resulted in seemingly unwarranted and disparate treatment, despite his cooperation. Finally, the penalty that was lodged against Plaintiff was disproportionate when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for similar offenses. The Plaintiff suffered an adverse employment action directly related to his position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964.

63. As a Hispanic man, Plaintiff is a member of a protected class.

64. Because of his national origin (Hispanic), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Title VII.

65. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's contract with Defendant that was made when Defendant hired

66. Plaintiff.

67. Defendant knew that Plaintiff was Hispanic prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his national origin.

68. Plaintiff has been treated differently and subjected to different terms and conditions of his employment contract with Defendant due to his national origin (Hispanic).

69. Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of privacy and enjoyment of employment opportunities, because of his national origin (Hispanic).

70. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of their employment.

71. Plaintiff's national origin was a determining factor in Defendant's unlawful conduct toward Plaintiff.

72. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

73. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his national origin (Hispanic).

## COUNT III

### VIOLATION OF TITLE VII - SEX DISCRIMINATION

74. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

75. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

76. Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is male and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified police officer, as he has approximately eight (8) years on the force and has had no serious on-duty disciplinary issues of record prior to the charges at issue. Additionally, Plaintiff suffered an adverse employment action directly related to his membership in a protected class pursuant to Title VII, when Defendant twice charged him with neglect of duty and suspended him for his off-duty DUI that ultimately resulted in seemingly unwarranted and disparate treatment, despite his cooperation. Finally, the penalty that was lodged against Plaintiff was disproportionate when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for similar offenses.

77. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of his employment.

78. Defendant knew that Plaintiff was male prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of his sex.

79. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his sex.

80. Defendant treated Plaintiff in a way that deprived him of workplace safety and otherwise adversely affected his status as an employee because of his sex.

81. Similarly situated female employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and his workplace conditions.

82. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

83. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

84. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

85. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his sex.

86. Defendant discriminated against Plaintiff because of his sex by engaging in, tolerating, or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

87. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

88. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages –

including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

89. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

90. Further, Defendant's treatment and actions are ongoing.

91. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

92. Similarly situated female employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

93. By law, Baltimore City Police Department must comply with Title VII, but through their conduct have violated Title VII.

## COUNT IV

## VIOLATION OF TITLE VII – RETALIATION

94. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

95. Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

96. Here, the Plaintiff faced retaliation for being named as a witness in a fellow Hispanic Officer's EEOC complaint against the Baltimore City Police Department.

97. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his role as a witness in opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

98. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff was named as a witness in his fellow officer's EEOC complaint based on his informal and formal complaint filings.

99. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

100. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

101. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

102. Similarly situated employees were not subjected to the same, similar, or any adverse treatment.

103. Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

104. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

105. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

106. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

107. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

108. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

109. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

110. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

111. The Baltimore City Police Department must comply with Title VII, and by and through their conduct, violated the law.

112. The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

113. Defendant is directly liable for the discriminatory acts or omissions of its employees while acting within the court and scope of their employment, under the theory of *Respondeat Superior*.

114. Defendant's actions were intentional, reckless, and malicious.

115. As a direct and proximate cause of Defendants' conduct alleged throughout this complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages— including but not limited to past and future loss of income, benefits, and career opportunities—and is entitled to all available legal and equitable remedies.

116. Plaintiff was humiliated, embarrassed, and made to ensure a great amount of pain and suffering. Plaintiff's injury is permanent in nature. Further, Defendant's actions were ongoing.

117. Plaintiff has incurred lost wages, loss of reputation, defamation of character now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT V

**SECTION 1983 CLAIM FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER SECTION 1981 OF THE CIVIL RIGHTS ACT**

118. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

119. Plaintiff brings claims of race and national discrimination against Defendant and its named Responsible Management Officials, for its violations of 42 U.S.C. §1981 through 42 U.S.C. §1983 for the deprivation of his property and liberty interests as protected by the 14th Amendment to the U.S. Constitution and these federal statutes.

120. Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.

121. The Defendant, and its responsible management officials, under 42 U.S.C. § 1983 are persons who acted "under the color of state law."

122. Defendant, BPD, unlawfully deprived Plaintiff of his due process rights in violation of Section 1981 of the Civil Rights Act.

123. Defendant treated Plaintiff disparately or pretextually in the terms and conditions of his employment compared with the way non-Hispanic employees, or employees that had not engaged in protected activity, were treated.

124. Plaintiff alleges that as a result of him being Hispanic or because he engaged in protected activities, he was illegally harassed, subjected to a pattern of harassment and disparate treatment, and knowingly subjected to unjustified and factually unsupported disciplinary actions.

125. The acts described above are part of an institutional practice or custom, constituting an official policy of the Baltimore Police Department to cover up officer misconduct, discrimination, and retaliation against fellow officers who stand up against the Department for violations of their civil rights that should protect them from discrimination and retaliation in the workplace.

126. At all times relevant hereto, Defendant acted pursuant to a custom or policy of the Baltimore Police Department.

127. Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the Police Department.

128. As a Hispanic man, Plaintiff is a member of a protected class.

129. Because of his race and national origin (Hispanic), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1983.

130. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiffs employment.

131. Defendant knew that Plaintiff is Hispanic prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of his race and national origin that he was subjected to.

132. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race and national origin (Hispanic).

133. Defendant has limited, segregated, and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee, because of his race (Hispanic).

134. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

135. Plaintiff and other fellow Hispanic police officers consistently attempted to report the pervasive culture and custom within BPD of treating Hispanic officers differently than White officers when it came to promotions, disciplinary actions, and conduct.

136. Plaintiff's allegations clearly show a custom of discrimination as required by Section 1983.

137. Plaintiff's race and national origin were a determining factor in Defendant's unlawful conduct toward Plaintiff.

138. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

139. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (Hispanic).

## COUNT VI

**VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT (FEPA)**

140. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

141. The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

142. Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) or directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions.   Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

143. Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

144. Here, the Plaintiff was subjected to harassment or offensive conduct that is based on race, national origin, and sex, when Defendant twice charged him with neglect of duty and

suspended him for his off-duty DUI that ultimately resulted in seemingly unwarranted and disparate treatment, despite his cooperation. Finally, the penalty that was lodged against Plaintiff was disproportionate when compared to the known penalties and repercussions that similarly situated colleagues outside of his protected class experienced for similar offenses.

145. The above-mentioned actions by the Defendants towards the Plaintiff demonstrate the discriminatory and prejudicial manner in which the Defendants treated the Plaintiff and his lawful claims against them.

146. The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (Hispanic).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Officer Adrian Ortiz, respectfully prays that this Court grant him the following relief:

a. Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, Section 1983, and FEPA;

b. Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c. Award back pay and compensatory damages in the amount of $500,000 (five-hundred thousand dollars and zero cents) that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and

psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.  Order such other relief as this Court deems just and equitable.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury of all issues so triable herein.


Dated: June 7, 2022


Respectfully submitted,

_____
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
Bar No. 19486
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Adrian Ortiz*