IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ADRIAN ORTIZ | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-22-01396 |
| BALTIMORE POLICE DEPARTMENT, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Adrian Ortiz ("Plaintiff") filed this action against his employer, Defendant Baltimore Police Department ("BPD"), asserting claims of discrimination and retaliation in violation of state and federal law. ECF 1. BPD filed a Motion to Dismiss the Complaint, ECF 7. The issues have been fully briefed, ECF 10, 13, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, BPD's Motion will be granted in part and denied in part.

I. BACKGROUND

The following facts are derived from the Complaint, ECF 1, and are taken as true for purposes of evaluating BPD's Motion to Dismiss.

Plaintiff, a self-described Hispanic male, joined BPD in 2014 and currently works as a Police Officer. ECF 1 ¶¶ 2, 20. In December, 2018, a "fellow Hispanic Officer" filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging that the BPD discriminated against him based on race, sex, national origin, and retaliation. *Id.* ¶ 21. Plaintiff "was named as a witness" in relation to that action, causing "numerous supervisors" to approach him and advise

1

that he "had a target on his back" due to his involvement with the other officer's discrimination claims. *Id.* ¶¶ 21, 22.

In May 2020, BPD charged Plaintiff with neglect of duty for failure to write a motor vehicle accident report during a traffic incident in December, 2015. *Id.* ¶ 24. Plaintiff was the only officer charged in that incident, despite the presence of at least one other officer at the scene. *Id.* Plaintiff was required to attend a refresher course for motor vehicle accidents. *Id.*

In October, 2020, while off-duty, Plaintiff was transported to Central Booking for driving under the influence ("DUI"). *Id.* ¶¶ 28, 30. He was initially transported to the hospital but was released to the responding officers without medical treatment. *Id.* The officers took him to headquarters where Internal Affairs administered a breathalyzer. *Id.* ¶ 29. He was placed in handcuffs and retained at Central Booking wearing a police shirt, which placed him in danger from other detainees. *Id.* ¶ 30. Following that incident, which was Plaintiff's second DUI, BPD placed Plaintiff on suspension. *Id.* ¶ 31.[1] In February 2021, BPD's Health Services Supervisor advised Plaintiff that he would be offered termination as a punishment for his second DUI, with the option of a Trial Board Hearing to fight the termination. *Id.* ¶ 31.

In April, 2021, BPD again charged Plaintiff with neglect of duty for failing to carry out certain administrative tasks in connection with another motor vehicle accident in June, 2020, despite the existence of body worn camera footage demonstrating that another officer had promised to handle those tasks. *Id.* ¶ 25. The other officers on the scene were not charged. *Id.* On February 8, 2022, Internal Affairs advised Plaintiff that he would receive a non-punitive

---

[1] Plaintiff's EEOC complaint stated that he was also arrested for a DUI in 2018. ECF 7-5 at 2. The EEOC complaint noted that, contrary to his October 2020 arrest, Plaintiff in that instance was "able to go home after being issued tickets" and was not further detained. *Id.*

counseling letter for the early termination of his body-worn camera. *Id.* ¶ 26. He later received additional charges for the same incident. *Id.*

During Plaintiff's suspension, BPD assigned its officers to permanent shifts. *Id.* ¶ 32. Plaintiff put in a bid for the shift he wanted based on his seniority. *Id.* However, Plaintiff did not receive his requested (or any other) shift assignment. *Id.* ¶ 33.

In February, 2022, the Central District Shift Commander offered Plaintiff overtime at the Central District front desk, despite his ongoing suspension. *Id.* ¶ 35. Plaintiff accepted, but then was told that he could no longer work overtime because he remained suspended. *Id.* "Based on reason and belief" other suspended officers continued to work overtime. *Id.*

Plaintiff received a right to sue letter on March 9, 2022 and filed the instant complaint in June, 2022. *Id.* ¶ 9.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The

purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court

4

is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Federal courts may consider documents incorporated into a complaint by reference without converting a 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Similarly, federal courts analyzing a motion to dismiss routinely consider EEOC charges and related documents, even if such documents are not filed with the Complaint. *See Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 907 n. 1 (D. Md. 2017) (observing that "the EEOC charge and its related documents are integral to the Complaint"); *Bowie v. Univ. of Md. Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015).

### III.  DISCUSSION

#### A. Race, National Origin, and Gender Discrimination (Counts I-III, and VI)

In Counts I, II, III and VI, Plaintiff alleges that BPD unlawfully discriminated against him on the basis of his race, national origin, and gender in violation of Title VII and the Maryland Fair Employment Practices Act ("MFEPA").[2] Initially, this Court agrees with BPD that Plaintiff has

---

[2] Courts "look to federal interpretation of Title VII as relevant authority when interpreting [M]FEPA." *Richards v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, 2020 WL 639424, at *3 (Md. Ct. Spec. App. Feb. 11, 2020). Neither party has attempted to distinguish the two statutes, and this Court will accordingly apply the federal standard to both. *Accord Linton v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, Civil No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md.

failed to exhaust those claims. His EEOC charge, dated March 10, 2021, was filed after his second DUI incident and after he had been recommended for termination. ECF 7-5 at 2. The EEOC charge does not state, or insinuate in any way, that those incidents were motivated by Plaintiff's race, national origin, or gender. *Id*. Instead, the EEOC charge expressly asserts that the allegedly differential treatment was attributable to Plaintiff's status as a witness to the discrimination charge filed by another officer. *Id*.

To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC. *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 438 (D. Md. 2013). Although an "EEOC charge defines the scope of the plaintiff's right to institute a civil suit," it "does not strictly limit a Title VII suit which may follow." *Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir. 2005) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). "[R]ather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (quoting *Bryant*, 288 F.3d at 132); *see also Hill v. W. Elec. Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982). The purpose of the administrative charge is to give the employer notice and opportunity to voluntarily and independently investigate and resolve the alleged discrimination. *See* 42 U.S.C. § 2000e-5(b); *Hill*, 672 F.2d at 390 n.6. Here, BPD's administrative investigation into Plaintiff's retaliation claim could not reasonably have been expected to look into race, national origin, or gender discrimination. Those factors were simply not referenced and were not part of the charge. *See*

---

Sept. 28, 2011) ("This Court has [] previously applied Title VII case law in adjudicating [M]FEPA claims . . . . The parties in this case have not alerted the Court to any applicable differences . . . [and] [t]he Court will therefore apply federal standards to both sets of claims."); *see also Brown v. Baltimore Police Dep't*, Civil No. RDB-11-00136, 2011 WL 6415366, at *14 (D. Md. Dec. 21, 2011); *Barreto v. SGT, Inc.*, 826 F. App'x 267, 270 (4th Cir. 2020) (unpublished) (applying without discussion Title VII standards to a MFEPA claim).

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("Our cases make clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge.").

Even had Plaintiff appropriately exhausted those claims, a prima facie case of race, national origin, or gender discrimination requires: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016); *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 778 (D. Md. 2020). A complaint may survive a motion to dismiss without fully establishing a prima facie claim. *Johnson v. Baltimore City Police Dep't*, Civ. No. ELH-12-2519, 2014 WL 1281602, at *5 (D. Md. Mar. 27, 2014) ("At the motion to dismiss stage, [the elements of a prima facie claim] serve only to inform a court's evaluation of the allegations." (citing *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010)). Rather, as with any other claim, a plaintiff must allege facts sufficient to "permit[] the court to infer more than the mere possibility of misconduct." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). BPD argues that the Complaint lacks sufficient allegations as to Plaintiff's discrimination claims. With regards to at least the fourth element, this Court agrees.

The fourth element of a prima facie claim may be shown based "on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar circumstances." *Booth*, 186 F. Supp. 3d at 486 (citing *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)). A comparator should be similarly situated in all relevant aspects. *Sawyers*, 946 F. Supp. 2d at 442 n.10. "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the

same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Johnson*, 2014 WL 1281602, at *19 (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (unpublished)).

The Complaint does not include comparator allegations from which this Court could plausibly infer that Plaintiff's alleged mistreatment derived from his membership in protected classes. Instead, as described in the factual summary above, the Complaint lists a series of all male comparators, leaving no inference to be drawn as to gender. ECF 1 ¶ 36. Three of the four comparators are alleged to have engaged in conduct bearing no semblance to the DUI offenses underlying the discipline Plaintiff received. *Id*. And the last comparator, who is alleged to have "several sustained DUI cases as well as a fleeing and eluding police charge," *id*. at ¶ 36(b), is a supervising officer who is not alleged to have had the same supervisor as Plaintiff. Thus, to the extent the Complaint details information on that comparator, it suggests that his role was dissimilar from Plaintiff's. In any event, the Complaint does not provide enough factual matter to permit an inference that in similar circumstances, BPD treated other similarly situated persons more favorably than Plaintiff.[3]

---

[3] This Court also notes that Plaintiff complains, in part, that he received discriminatory treatment during his arrest and detention for DUI. That treatment would not constitute a materially adverse employment action because it did not effect "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Plaintiff alleges, of course, that he was treated differently from DUI arrestees who are not police officers, but those individuals are not comparators because they are not BPD employees.

Plaintiff's claims for race, national origin, and gender discrimination in violation of Title VII (Counts I-III), and those same claims asserted under MFEPA (Count VI), will be dismissed without prejudice for failure to state a claim.[4]

**B. Retaliation (Count IV)**

In Count IV, Plaintiff alleges that BPD retaliated against him in violation of Title VII. Initially, BPD has argued that Plaintiff's claims in this action must be limited to the specific, allegedly illegal acts listed in the EEOC charge. This argument is misplaced, however, to the extent that BPD seeks to limit Plaintiff's retaliation claims.

As noted above, "the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Miles,* 429 F. 3d at 491 (quoting *Bryant*, 288 F.3d at 132); *see also Hill*, 672 F.2d at 390 n.6. Where "the retaliation occurred prior to the filing of the charge, the claim will be held to the exhaustion requirements applicable to other Title VII claims." *Brown v. Univ. of N. Carolina Health Care Sys.*, No. 1:20-CV-0086, 2021 WL 512222, at *6 (M.D.N.C. Feb. 11, 2021) (citing *Crosten v. Kamauf,* 932 F. Supp. 676, 683 (D. Md. 1996)). Conversely, the Fourth Circuit has made clear that a "plaintiff asserting a Title VII claim of retaliation *for filing a previous EEOC charge* . . . may raise the retaliation claim for the first time in federal court." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (emphasis added); *see also Brown*, 2021 WL 512222, at *6 ("Typically, a claim for retaliation that is based upon the filing of an EEOC charge is not subject to the same exhaustion requirements as other Title VII claims.").

---

[4] Because Plaintiff's MFEPA claim is subject to dismissal for failure to exhaust administrative remedies and failure to state a prima facie claim of discrimination, this Court need not reach the contested issues of whether Plaintiff complied with the Local Government Tort Claims Act or whether BPD enjoys sovereign immunity. Moreover, as pled, Plaintiff's MFEPA claim does not appear to include retaliation. *See* ECF 1 ¶¶ 140-46.

In this case, the contents of the EEOC charge do not preclude Plaintiff from claiming retaliation for the alleged BPD conduct that occurred after he filed the charge on March 10, 2021, *see* ECF 1 ¶ 8. This includes his second neglect of duty charge in April 2021, and Plaintiff's allegations regarding overtime and scheduling. *Id*. at ¶¶ 25-26, 35. Liberally construed, Plaintiff's complaint asserts that he was discriminated against for his "prior protected activity," which would include the filing of the charge. *Id.* ¶¶ 100-01. BPD's contention that Plaintiff is precluded from making those claims because he failed to check the "continuing action" box in his EEOC charge is illogical—Plaintiff cannot be required to see into the future and determine whether further incidents of retaliation will occur when filing a claim.

Turning to the substantive allegations, to state a claim for Title VII retaliation, a plaintiff must allege: "(1) that [plaintiff] engaged in a protected activity, (2) that the employer took a materially adverse action against [plaintiff] and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). For purposes of the second element, a plaintiff must allege that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 491-92 (D. Md. 2013) (quoting *Madock v. McHugh*, Civ. No. ELH–10–2706, 2011 WL 3654460, at *26 (D. Md. Aug. 18, 2011)). The standard for an "adverse action" in a retaliation claim "is less strenuous than the standard in a discrimination claim, because the adverse employment action in a retaliation case need not affect an employee's terms or conditions of employment." *Id.* at 492 (internal citations and quotation marks omitted).

Plaintiff's filing of an EEOC charge, and his participation in an EEOC proceeding as a witness for another employee, constitutes protected activity. And at this stage, Plaintiff plausibly

10

alleges that BPD's conduct constituted an adverse action because it may dissuade a reasonable worker from making or supporting a charge of discrimination. Similarly, Plaintiff has alleged sufficient facts at this juncture to suggest that BPD took its adverse actions because of Plaintiff's EEOC activity. It may well be, after discovery, that the more than one year period between Plaintiff's disclosure as a witness and BPD's initiation of disciplinary proceedings may be too attenuated to establish a causal connection. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) ("There must also be some degree of temporal proximity to suggest a causal connection."). Additionally, Plaintiff may have an uphill battle showing that the relevant decisionmakers had knowledge of his status as a witness. However, on the facts alleged, initiation of new disciplinary proceeding months or years after the underlying incidents, against Plaintiff only and not against others with similar involvement, suffice to state a retaliation claim at this early stage. Accordingly, BPD's Motion to Dismiss Count IV will be denied.

### C. Section 1981 and 1983 (Count V)

Count V of the Complaint alleges that BPD discriminated against Plaintiff in violation of 42 U.S.C. §§ 1981 and 1983. BPD argues that Plaintiff has failed to state a claim under either statute.

As BPD observes, claims against state actors for violation of rights guaranteed in § 1981 are properly brought under § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ."); *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Thus, Plaintiff's claim is properly viewed as a claim under § 1983. And, given the low bar required at this early stage, the Complaint adequately alleges facts establishing the existence of an unconstitutional policy or custom, specifically an

"institutional practice or custom, constituting an official policy of the Baltimore Police Department to cover up officer misconduct, discrimination, and retaliation against fellow officers who stand up against the Department for violations of their civil rights that should protect them from discrimination and retaliation in the workplace." ECF 1 ¶ 125. The facts supporting that claim are set forth in paragraphs 22 and 23 of the Complaint, which explain how numerous supervisors warned him against going "against the Department" and told him he would be blackballed. The Complaint also alleges a failure to train management officials to protect officers against retaliation for objecting to unconstitutional discrimination. *Id.* ¶ 127. Accordingly, Count V will also survive dismissal, as Plaintiff is entitled to discovery as to his *Monell* claim.

## IV. CONCLUSION

For the reasons set forth above, BPD's Motion to Dismiss, ECF 7, is GRANTED WITHOUT PREJUDICE as to Counts I, II, III, and VI, and DENIED as to Counts IV and V. A separate Order follows.

Dated: February 7, 2023                              /s/
                                           Stephanie A. Gallagher
                                           United States District Judge