IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **ADRIAN ORTIZ,** | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Case No. SAG-22-1396 |
| | * | |
| **BALTIMORE POLICE DEPARTMENT,** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Adrian Ortiz ("Plaintiff") filed a Complaint against the Baltimore Police Department ("BPD"), alleging claims relating to his employment. ECF 1. On February 7, 2023, this Court granted a motion to dismiss a number of Plaintiff's claims, leaving only (1) his claim for Title VII retaliation and (2) his *Monell* claim pursuant to 28 U.S.C. §§ 1981 and 1983. ECF 15. Discovery has now concluded, and BPD has filed a motion for summary judgment as to both claims. ECF 40. This Court has reviewed the motion, the opposition, and the reply, along with the relevant exhibits. ECF 51, 52, 55. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's Motion for Summary Judgment, ECF 40, will be GRANTED.

I.   **FACTUAL BACKGROUND**

The facts contained herein are taken in the light most favorable to Plaintiff, the non-moving party.[1] Plaintiff began working as an officer with the BPD in 2014. ECF 7-5 at 2. In December,

---

[1] While the admissible or potentially admissible facts are taken in the light most favorable to Plaintiff, this Court has not included the multitude of hearsay statements that Plaintiff included in his "statement of material facts in dispute." ECF 51-1 at 2-10. Hearsay recitations of what other people told Plaintiff, or speculative, uncorroborated statements about what other people were "aware of" or "knew," cannot be considered in evaluating summary judgment. *See Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory or based upon hearsay.") (internal citation omitted); *Maryland Highways*

2018, another officer, Luis Garcia, filed an EEOC complaint against BPD. ECF 51-4 at 4. Plaintiff alleges that Garcia "put me down as a witness for his case," ECF 40-3 at 4[2], but he did not sit for a deposition, provide any statements to any attorney, speak with anyone at the EEOC, or testify in any court proceeding. *Id.* at 5-7. On October 2, 2019, Garcia filed a federal lawsuit related to his EEOC discrimination claims. *See* ECF 1, *Garcia v. Baltimore City Police Dep't*, Civ. No. 1:19-2905-SAG. Plaintiff's name did not appear anywhere in Garcia's Complaint. *Id.* After the BPD filed its answer in the *Garcia* case, the parties opted for an early settlement conference with a United States Magistrate Judge, and the case resolved by settlement order on March 6, 2020, before any discovery took place. *See Garcia*, ECF 12, 15.

While Plaintiff did not tell anyone at work that he would be a witness for Garcia, he assumes that others, specifically "Sgt. Dixon" and "Sgt. Kratz," thought that he would because he and Garcia were friends. ECF 40-3 at 44. Plaintiff had observed mistreatment of Garcia in the workplace and had reported the mistreatment to unspecified managers and supervisors. ECF 52 at 93-96. Plaintiff did not specify whether his reports of mistreatment referenced status-based discrimination or retaliation. In fact, he testified that he did not make reports about Garcia because he identified as Hispanic. *Id.* at 98.

---

*Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251-52 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."). Plaintiff's exhibits consist only of his own assertions, whether via his discovery responses, his deposition testimony, the complaints he filed with the department, or his affidavit. He offers no corroborating testimony or affidavits from any other witnesses. This Court's factual recitation consists therefore of matters within Plaintiff's personal knowledge or matters evidenced in other exhibits or the docket of the *Garcia* case.

[2] Pinpoint citations are to the ECF numbering at the top of the pages, not the page numbering on the deposition transcripts themselves.

In or around July, 2020, Detective Bruce Gertz from the Public Integrity Bureau (PIB) interviewed Plaintiff about an incident that had occurred in 2015. ECF 41-4 at 3. On August 19, 2020, Det. Gertz charged Plaintiff with neglect of duty for that 2015 incident, but did not charge Plaintiff's supervisor, Sergeant Gillgannon, who had responded to the scene as a backup officer.[3] ECF 51-1 at 4; 51-4 at 4.

On October 7, 2020, BPD officers found Plaintiff outside his car vomiting when he was off duty. ECF 51-4 at 5. At the direction of Lt. Daniel Popp, BPD charged Plaintiff with DUI and took him to the Central Booking intake facility wearing a Baltimore City police T-shirt. *Id.* Following his arrest, BPD administratively suspended Plaintiff without holding a suspension hearing. *Id.* at 6. On a prior occasion in 2018, when Plaintiff had also been charged with DUI, the responding officer issued four moving violations and released him. *Id.* The BPD had issued a suspension and a severe letter of reprimand for the 2018 incident. ECF 41-13.

Plaintiff filed an EEOC Charge of Discrimination on March 10, 2021. ECF 7-5. That charge alleged retaliation and read, in relevant part:

> In October 2019, I was named as a witness to an EEO lawsuit file [sic] by Police Officer Luis Garcia against the department. As a result, I've been subjected to unequal terms and conditions of employment and offered discharge without going to court. On August 19, 2020, I was charged with neglect of duty from an incident that occurred 5 years ago. On October 7, 2020, I was arresting [sic], issued DUI/DWI citations, and taken to jail. Although in 2018, I was charged with DUI and was able to go home after being issued tickets. I am aware of multiple similarly situated officers who were not sent to jail, suspended or offered termination for the same infraction and remain employed by Respondent . . . I was informed during the early intervention meeting in 2021 that the department would recommend termination for the second alcohol related incident although my case has not gone to court. . . I believe I was retaliated against for engaging in a protected activity because my name was provided as a witness to an EEO lawsuit against the

---

[3] The BPD report reflects that Plaintiff told Det. Gertz that he did not remember Sgt. Gillgannon responding to the scene in 2015. ECF 41-1 at 3 ("Officer Ortiz did not recall Sergeant Gillgannon . . . responding as a backup unit."). For purposes of this motion, however, this Court is taking the evidence in the light most favorable to Plaintiff.

3

>department, with respect to unequal terms and conditions of employment and discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.*

In April, 2021, BPD charged Plaintiff with neglect of duty for a separate car accident that had occurred in June, 2020. ECF 51-4 at 4-5. Plaintiff and other officers were also charged with a body camera violation for that incident. *Id*. at 5. After review, in March, 2022, none of the officers were disciplined for their use of the body camera. *Id*. Plaintiff was the only officer disciplined for neglect of duty in that incident. ECF 41-6 at 7; ECF 52 at 110-11. He reached an agreed disposition of a simple letter of reprimand. ECF 41-7 at 3-4.

During this time frame, after Plaintiff's suspension for the 2020 DUI, he alleges other disparate treatment: that he was reprimanded for cell phone use when other desk officers were not, was the only desk officer required to attend roll call, was the only desk officer required to write a report for being late, and was the only officer "who experienced paycheck and shift issues with Sgt. Steven." ECF 51-5 at 5; ECF 51-4 at 9. On August 29, 2021, Plaintiff submitted a form 92/95, reporting what he characterized as unfair and retaliatory treatment he received from Sgt Steven (but making no reference to the Garcia case matter two years earlier or his EEOC charge filed five months earlier). ECF 51-5 at 5. Plaintiff submitted additional forms 92/95 against Sgt. Steven on September 6, 2021, and on October 5, 2021, after Sgt. Steven asked Plaintiff to wear court attire while working at the front desk. ECF 51-5 at 4, 6. Again, the forms made no reference to any EEOC proceeding. *Id.* Because Plaintiff believed he had not been assigned a shift or leave group like other officers, he again submitted a Form 92/95 on December 30, 2021. *Id.* at 3. Once again, the form made no reference to any EEOC proceeding. *Id.* And on February 11, 2022, Lt. Sinchak ordered that Plaintiff was ineligible to work overtime because he was administratively suspended. *Id.* at 2. Plaintiff again submitted a 92/95 form to complain he felt "targeted and punished because

4

I am suspended." ECF 51-5 at 2. The form again did not reference Garcia or any EEOC-related issues. *Id.*

With respect to the 2020 DUI incident, the Baltimore City State's Attorneys Office filed criminal charges against Plaintiff, which were later nolle prossed. ECF 40-12. BPD's administrative investigation resulted in two sustained findings of misconduct, including DUI. ECF 41-8 at 8. Plaintiff requested a trial board, which resulted in an administrative evidentiary hearing. ECF 41-10. At its conclusion, the five-member board ruled against Plaintiff and recommended discipline to include a severe letter of reprimand, suspension, and an involuntary transfer. *Id.* However, on December 13, 2023, Police Commissioner Richard Worley reviewed the board's recommendation and, citing the fact that this was not Plaintiff's first sustained DUI matter and his blood alcohol concentration of .21, increased the discipline to include termination. *Id.* Plaintiff does not know if Commissioner Worley, or anyone else involved in investigating his case, knew of the Garcia matter, his charge of discrimination, or this lawsuit, which had been filed in June of 2022. ECF 40-3 at 40-41.

## II.   LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence

to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III.   ANALYSIS

Plaintiff has two counts remaining: (1) Title VII retaliation following protected activity; and (2) constitutional violations brought pursuant to §§ 1981 and 1983. Each claim is addressed below.

### A. Title VII Retaliation

In addition to prohibiting discrimination based on a protected class, Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination or retaliation. *See* 42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a). Title VII retaliation can be established by direct evidence, or by the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). Direct evidence "must demonstrate that an adverse employment action was actually due to [a protected activity] as opposed to some other lawful reason." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016) (citation omitted). No direct evidence is present here. Plaintiff offers no admissible evidence, or any evidence that can be put in admissible form, tying any of the disciplinary actions he faced to his involvement with Garcia's claims. The only connections he attempts to draw lie in hearsay statements he states were made by Sgt. Davis and some unnamed individuals. Hearsay cannot be considered in the summary judgment context.

Thus, in the absence of direct evidence, this Court must assess Plaintiff's claim under the *McDonnell Douglas* standards. To survive summary judgment using that framework, "the plaintiff must first establish a *prima facie* case of retaliation, whereupon the burden shifts to the employer to establish a legitimate non-retaliatory reason for the action." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). If the employer proffers a legitimate, non-retaliatory explanation, "the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail." *Id.* Pretext can be proven "by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative" of retaliation. *Id.* (citation omitted).

In general, a *prima facie* case of retaliation requires proof (1) that the plaintiff engaged in protected activity; (2) that BPD took an adverse employment action against him; and (3) that there is a causal relationship between the protected activity and the adverse employment action. *Id.*

Here, BPD contests whether Plaintiff has established that he even engaged in protected activity. Protected activity is defined as "oppos[ition] to any practice" or "participation in any manner in an investigation, proceeding, or hearing." Section 3(a) of Title VII; *see also Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinion in order to bring attention to an employer's discriminatory activities."). Plaintiff generally alleges that he reported mistreatment of Garcia to supervisors in the department. But that assertion alone does not establish protected activity because it does not reference discrimination. As the Fourth Circuit has explained,

> Our cases hold that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct. *Richardson v. Richland Cnty. School Dist. No. 1*, 52 F. App'x 615, 617 (4th Cir. 2002) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 291–92 (2d Cir.1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.")); *Sajadian v. Am. Red Cross*, No. 99-1263, 1999 WL 1111455, at *1 (4th Cir. Dec.7, 1999) (same); *see also* EEOC Compliance Manual § 8–II.B.2 (2006) ("[A] protest is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination."). Determining whether an employer should have understood a complaint to constitute protected activity requires courts to consider whether the complaint could reasonably have led the employer to understand the nature of the complaint in the context in which it was made. *Richardson*, 52 F. App'x at 617.

*Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012).

In other words, simply telling a supervisor that co-worker has been mistreated in some way is not protected activity, even if that co-worker is a member of a protected class, absent some

8

evidence that the supervisor understood or reasonably could have understood that the unfair treatment stemmed from discrimination or retaliation. Plaintiff has not adduced any evidence or details about what he reported to create a genuine issue of material fact regarding any supervisor's understanding that he was reporting discriminatory or retaliatory conduct. His lack of specificity and admissible evidence do not permit any such inference to be drawn at the summary judgment stage of the case.

Plaintiff's Forms 92/95, which were filed in the mid-2021 through early-2022 timeframe, ECF 51-5, suffer the same deficiency. While they occasionally mention "retaliation," they do not reference the *Garcia* matter, Plaintiff's EEO charge, Plaintiff's or Garcia's membership in any protected class or any other activity protected by Title VII. *Id*. In fact, some of the forms suggest an entirely different motive for the poor treatment. ECF 51-5 at 5 ("I know I will continue to be treated unfairly because I am suspended and I am just the desk officer."); *id.* at 6 ("I am aware and will be dealing with the consequences and retaliation for filing this 95."). Retaliation for matters other than conduct relating to discrimination does not violate Title VII. Accordingly, Plaintiff has failed to present evidence to defeat summary judgment as to the first element of the required prima facie case.

The second element for a prima facie case is whether BPD took an adverse employment action against Plaintiff. Adverse employment actions are those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This Court will assume, without deciding, that Plaintiff can satisfy the second element in light of his termination.

Even had he been able to satisfy both of the first two prongs, though, Plaintiff's claim fails due to an utter lack of evidence to establish a causal connection between the adverse actions he

alleges and any protected activity he took. Plaintiff bears the burden to prove that the alleged retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). In other words, these retaliation claims must meet the high burden of showing "but-for" causation – that BPD would not have taken these actions against him but for his protected activity. Although a plaintiff need not conclusively establish a causal connection to prevail on summary judgment, *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998), unlike at the motion to dismiss stage, the plaintiff must offer evidence, not mere conclusory allegations, to support the existence of a causal connection.

In some cases, that evidence begins with showing close temporal proximity between the protected activity and the adverse employment action. *See, e.g.*, *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). Here, however, the timeline of events undermines, rather than supports, the notion that the actions Plaintiff cites had any connection to his involvement with the Garcia situation. As noted above, Garcia filed his EEOC charge in 2018, and the Garcia matter resolved in its entirety by 2019 or early 2020. The first adverse action Plaintiff alleges is that he was investigated and charged months later, in the summer of 2020, with neglect of duty for an incident that had occurred in December, 2015. This is not a case in which the employer "takes adverse employment action against an employee *shortly after* learning of the protected activity." *Price*, 380 F.3d at 213 (emphasis added). In fact, Plaintiff was not terminated until late 2023, almost four years after the Garcia matter had concluded.

Further weakening Plaintiff's evidence of causal connection is the failure to adduce any evidence identifying particular people within BPD who knew of Plaintiff's connection with the Garcia matter. The record identifies a series of different decisionmakers for the various adverse

actions Plaintiff alleges. For example, the officer who interviewed and charged Plaintiff in the summer of 2020 is Detective Bruce Gertz from the Public Integrity Bureau, not someone within Plaintiff's unit or department. ECF 41-4. And the records relating to that incident suggest that the citizen complaint came directly to the Public Integrity Bureau. *Id.* The officer who Plaintiff alleges ordered his arrest in connection with his DUI in October, 2020 is Lt. Daniel Popp, who works in Internal Affairs. ECF 51-4 at 5-6. Plaintiff does not adduce evidence that Lt. Popp had any information regarding the Garcia matter. Commissioner Richard Worley made the decision to terminate Plaintiff, and Plaintiff acknowledges he has no evidence that Commissioner Worley had any information regarding his alleged protected activity. ECF 40-3 at 40-41. The same pattern persists with the other incidents Plaintiff describes: there is no link, other than speculation, showing that any relevant decisionmaker knew of the Garcia matter or Plaintiff's EEO claims.[4] In a police department with thousands of employees, mere speculation about universal knowledge does not suffice.

Ultimately, Plaintiff's subjective belief that what he perceived as unfair treatment constituted intentional retaliation is not based on any factual predicate and cannot defeat BPD's summary judgment motion. *See, e.g.*, *Settle v. Balt. Cnty.*, 34 F. Supp. 2d 969, 999 (D. Md. 1999) (finding Plaintiff's subjective belief that Defendant's action was racially motivated was insufficient, in the absence of articulable facts showing a "racial nexus"); *Vazquez v. Md. Port Admin.*, 937 F. Supp. 517, 522 (D. Md. 1995) ("Generalized testimony by an employee regarding

---

[4] In fact, Plaintiff's speculation that there was widespread knowledge of his involvement in protected activity and that BPD maintained a policy to retaliate against such officers is undermined by his various reports suggesting that he was treated poorly by some management and better by others. *See, e.g.*, ECF 51-5 at 4 (Lieutenant Colon and Johnson deemed Plaintiff's clothing to be fine while Sergeant Steven said it was inappropriate); 51-5 at 2 (Lieutenant Colon offered Plaintiff overtime but Lieutenant Sinchak said he was ineligible).

[Plaintiff's] subjective belief that the adverse action was the result of discrimination is insufficient to make an issue for the jury."). Plaintiff has no evidence of a causal link between the adverse actions and his alleged protected activity, and summary judgment for BPD is therefore warranted on his Title VII retaliation claim.

### B. Constitutional Claims

Plaintiff also asserted a constitutional claim under §§ 1981 and 1983. To establish the BPD's liability for constitutional due process violations committed by its employees, Plaintiff would have to show that constitutionally offensive acts were "taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). As this Court explained when evaluating Plaintiff's motion to dismiss, Plaintiff would at this stage have to adduce evidence establishing that officers who "go against the Department" are blackballed or that BPD failed to train its supervisors to protect officers against retaliation for opposing discriminatory acts. ECF 14 at 11-12.

Plaintiff offers no usable evidence. Instead, he repeatedly cites only his own testimony recounting inadmissible hearsay to support his assertions (ECF 51-1 at 24) (citing only Plaintiff's deposition testimony about statements made to him by Sgt. Dixon and other unidentified "fellow coworkers and supervisors"). As the Fourth Circuit recently reiterated:

> [S]ummary judgment affidavits cannot be conclusory or based upon hearsay. *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citation omitted). They must "contain admissible evidence and be based on personal knowledge." *Id.* If they don't, however, the district court should not "strike the entire affidavit," but instead should "str[ike] and disregard[ ] only those portions it deem[s] inadmissible or improper in accordance with Rule 56(e)." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact ... the court may ... grant summary judgment.").

12

*Simmons v. Whitaker*, 106 F.4th 379, 386 (4th Cir. 2024). In the absence of admissible evidence from Sgt. Dixon or the other co-workers, in the form of sworn testimony or sworn declarations, their alleged statements as parroted by Plaintiff constitute hearsay. They thus must be disregarded and are insufficient to permit Plaintiff's claims to proceed.

As to training, BPD produced evidence about its policies and training relating to anti-retaliation. ECF 40-20, 40-21. Plaintiff offers no evidence to suggest that any of the decisionmakers in this case did not receive the training, and no evidence to establish that the BPD's training protocols were deficient. In the absence of any admissible evidence, this Court has an "affirmative obligation" to prevent "factually unsupported claims and defenses" from advancing to trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). Summary judgment must therefore be granted, as Plaintiff has not adduced sufficient evidence to create a genuine issue of material fact.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF 40, will be GRANTED. A separate Order of Judgment follows.

Dated: September 25, 2024                                    /s/
                                                            Stephanie A. Gallagher
                                                            United States District Judge